IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MARK WINGER, K-97120, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 19-cv-00236-NJR |
| | ) | |
| MOHAMMED SIDDIQUI, | ) | |
| AIMEE LANG, | ) | |
| DR. RITZ, | ) | |
| GAIL WALLS, | ) | |
| RON SKIDMORE, | ) | |
| TERRI ANDERSON, | ) | |
| T. RAUDY, | ) | |
| SGT. HARRIS, | ) | |
| SPILLER, | ) | |
| JOHN DOE 2, | ) | |
| JOHN DOE 3, | ) | |
| ROWOLD, | ) | |
| KELLY PIERCE, | ) | |
| MELISSA PHOENIX, | ) | |
| JOHN DOE 4, | ) | |
| JOHN DOE 5, | ) | |
| WEXFORD HEALTH SOURCES, INC., | ) | |
| ILLINOIS DEPT. OF CORRECTIONS, | ) | |
| DR. NEWBALD, | ) | |
| HOLLY HAWKINS, and | ) | |
| BOSWELL PHARMACY SERVICES, | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Mark Winger, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Menard Correctional Center ("Menard"), filed this civil rights action pursuant to 42 U.S.C. § 1983 for miscellaneous deprivations of his rights under federal and state law while incarcerated in the IDOC from 2012-2018. (Doc. 1, pp. 1-156). He describes these deprivations in a 156-page Complaint against 21 defendants. (*Id.*). Plaintiff seeks money damages against the defendants for violations of his rights under the First, Fifth, Eighth, and Fourteenth Amendments and Illinois state law. (*Id.* at pp. 1-2). He also requests "immediate injunctive relief,"

1

which the Court construed as a temporary restraining order and denied without prejudice on February 26, 2019. (Doc. 3). Plaintiff has not renewed his request for any interim relief.

The Complaint is before the Court for preliminary review under 28 U.S.C. § 1915A, which requires the Court to screen prisoner complaints and filter out non-meritorious claims. 28 U.S.C. § 1915A(a). Any portion of the Complaint that is legally frivolous or malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations are liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Before the Court screens the Complaint under Section 1915A, it is first necessary to consider whether any claims are improperly joined in the action and subject to severance. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). The Court has identified five separate incidents involving different groups of defendants. The claims arising from each incident belong in their own lawsuit. A summary of each incident is set forth below, followed by the Court's order severing this matter into four additional lawsuits.

## SUMMARY OF CLAIMS

### First Incident: Tamms 2012-2013

During his incarceration at Tamms Correctional Center[1] in February 2012, Plaintiff developed a severe and persistent headache that resulted in bilateral Bell's Palsy. (Doc. 1, pp. 16-17). He sought treatment for the condition, which included "catastrophic vision failure," with Dr. Powers in 2012 and 2013. Dr. Powers referred Plaintiff to an outside eye doctor (Dr. Ahmed) for treatment. Dr. Ahmed recommended further evaluation with a neurologist, but the referral request was denied. Sarah Johnson and Teri Anderson affirmed this decision. Anderson is the only named defendant involved in this first incident.

---

[1] Tamms was an IDOC supermax facility that closed in 2013.

2

## Second Incident:  Menard 2013-2018

The second incident occurred at Menard from 2013-2018,[2] when Plaintiff was denied treatment for watery eyes and a dry mouth. (Doc. 1, pp. 17-25). Dr. Shearing and Dr. Trost met with Plaintiff and agreed that he was experiencing lingering symptoms of Bell's Palsy—symptoms that could have been mitigated with prompt treatment at Tamms. As for Plaintiff's watery eyes, Dr. Shearing and Dr. Trost indicated that surgery was the only treatment option, but they stated that Wexford Health Sources would deny a request for surgery because it was considered cosmetic. As for Plaintiff's dry mouth, Dr. Shearing and Dr. Trost recommended prescription mouth wash (Biotene). Although Plaintiff was initially given a 12-month prescription, he faced regular interference with his prescription refills from the following individuals:  Shearing, Trost, Siddiqui, Shah, Oakley, Skidmore, Asselmeier, Newbald, Sutterer, and Boswell Pharmacy Services, LLC. His grievances regarding this issue were denied or disregarded by Walls, Hawkins, and Rowold. The only defendants named in connection with this incident are Siddiqui, Walls, Skidmore, Rowold, Newbald, Hawkins, Wexford, and Boswell Pharmacy Services. (*Id*.).

## Third Incident:  Menard—March 23, 2017

Plaintiff complains of a third incident involving Dr. Siddiqui, Aimee Lang, an unknown officer, and Sergeant Harris at Menard on March 23, 2017. (Doc. 1, pp. 7-16, 34-37). On that date, he met with the defendants to discuss renewal of three medical permits, including a double-cuff permit. Plaintiff was issued the permit years earlier for degenerative arthritis and a shoulder injury. But Nurse Lang questioned his continued need for it. As Dr. Siddiqui stood watching, Nurse Lang encouraged Sergeant Harris to cuff Plaintiff behind his back to see if it caused him pain. Sergeant Harris did so until Plaintiff cried out in pain. Only then did Dr. Siddiqui renew his permit.

---

[2] Plaintiff requested treatment for these symptoms after transferring from Tamms to Pontiac and then to Menard in July 2013.

At the same appointment, Plaintiff complained of chest pain and shortness of breath. Dr. Siddiqui and Nurse Lang refused to address his complaints, despite the fact that Dr. Siddiqui and Dr. Trost previously requested a stress test for Plaintiff that Wexford and Dr. Ritz denied.

Plaintiff filed grievances to complain about the third incident on April 6, 2017, but Hawkins, Rowold, Pierce, Spiller, Phoenix, John Doe 2 (internal affairs supervisor), John Doe 4, and John Doe 5 failed to investigate his grievance before denying it on September 6, 2017.

The defendants named in connection with this incident are Siddiqui, Lang, Harris, Wexford, Ritz, Hawkins, Rowold, Pierce, Spiller, Phoenix, John Doe 2 (internal affairs supervisor), John Doe 4, and John Doe 5. (*Id*.).

### Fourth Incident: Menard—2017

Plaintiff also complains of the denial of medical treatment for a chest injury that occurred in Menard's prison yard on July 24, 2017. (Doc. 1, pp. 26-32). He sought treatment for severe and persistent pain by filing a sick call request on July 27, 2017. Muldenhauer did not meet with Plaintiff until August 7, 2017. Even then, Plaintiff suffered so much pain during the examination that Muldenhauer ordered Plaintiff x-rays and prescribed Mobic.[3] Plaintiff requested an MRI, but Muldenhauer denied his request. Plaintiff filed a grievance to complain about Muldenhauer's response, and Hawkins recommended submitting a treatment request instead. Plaintiff sent treatment requests to Hawkins and Steilhorn, and Nurse Raudy met with him on September 20, 2017. Nurse Raudy denied him treatment after interviewing him. (Doc. 1, p. 28). Plaintiff filed a grievance to complain about this denial of medical care, which he characterized as retaliatory. Pierce denied his grievance after reviewing medical records that Nurse Raudy falsified. The only defendants named in connection with the fourth incident are Raudy and Pierce. (*Id*.).

---

[3] Plaintiff alleges that he was already taking Mobic for degenerative arthritis.

4

**Fifth Incident: Menard—2018**

Finally, Plaintiff complains of a fifth incident involving Dr. Diebold and John Doe 3. (Doc. 1, p. 23). Sometime in 2018, Plaintiff noticed that a crown on his tooth was loose. He complained to Dr. Diebold and "other" dental staff. Plaintiff also asked John Doe 3 to issue a sick call pass so that he could address the matter. Doe #3 failed to issue the pass, and Plaintiff's crown fell out. The only defendant named in connection with this incident is John Doe 3. (*Id.*).

## DISCUSSION

*Preliminary Dismissals*

Plaintiff refers to numerous individuals who are not named as defendants in the Complaint. These individuals include, but are not limited to: Dr. Powers, Dr. Ahmed, Sarah Johnson, Dr. Shearing, Dr. Trost, Dr. Shah, Oakley, Dr. Asselmeier, Sutterer, Muldenhauer, Dr. Diebold, and an unknown officer. When parties are not listed in the caption, this Court will not treat them as defendants, and any claims against them should be considered dismissed without prejudice. *See* FED. R. CIV. P. 10(a) (noting that the title of the complaint "must name all the parties"); *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (holding that to be properly considered a party, a defendant must be "specif[ied] in the caption"). These individuals are not considered a part of this action, absent any designation to this effect in the Complaint.

*Severance*

Plaintiff's claims arise from five separate incidents. They involve different defendants, separate transactions or occurrences, no common questions of fact, and distinct legal theories. They cannot proceed together in the same suit. *See* FED. R. CIV. P. 18, 20(a)(2); *George v. Smith*, 507 F.3d at 607; *Wheeler v. Talbot*, 695 F. App'x 151 (7th Cir. 2017); *Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017). District courts have a duty to apply Rule 20 of the Federal Rules of Civil Procedure to prevent improperly joined parties from proceeding together in the same case. *George*,

507 F.3d at 607. Rule 21 of the Federal Rules of Civil Procedure grants district courts broad discretion when deciding whether to sever claims or to dismiss improperly joined defendants. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011). The Court will exercise its discretion and sever the claims arising from each separate incident into four additional suits, as follows:

| | |
|---|---|
| **Severed Case No. 1:** | Federal and state law claims against Teri Anderson for denying Plaintiff adequate medical care for Bell's Palsy and related symptoms at Tamms in 2012 and 2013 (all claims arising from "First Incident"). |
| **Severed Case No. 2:** | Federal and state law claims against Siddiqui, Walls, Skidmore, Rowold, Newbald, Hawkins, Wexford Health Sources, Inc., and Boswell Pharmacy Services for denying Plaintiff adequate medical care for the lingering symptoms of Bell's Palsy during his incarceration at Menard from 2013-2018 (all claims arising from "Second Incident"). |
| **Severed Case No. 3:** | Federal and state law claims against Siddiqui, Lang, Harris, Wexford, Ritz, Hawkins, Rowold, Pierce, Spiller, Phoenix, John Doe 2 (internal affairs supervisor), John Doe 4, and John Doe 5 for subjecting Plaintiff to unnecessary force, delaying his double-cuff permit, and denying him treatment for chest pain on or around March 23, 2017 (all claims arising from "Third Incident"). |
| **Severed Case No. 4:** | Federal and state law claims against Raudy and Pierce for denying Plaintiff medical treatment, including an MRI and/or a referral to a doctor, for treatment of severe and persistent chest pain on and after July 24, 2017, in retaliation against Plaintiff for filing a grievance against Nurse Lang (all claims arising from "Fourth Incident"). |
| **This Case:** | Federal and state law claims against John Doe #3 for denying Plaintiff a call pass to see the dentist about a loose crown at Menard in 2018 (all claims arising from "Fifth Incident"). |

The Clerk will be directed to open Severed Cases No. 1 through 4. Plaintiff will be responsible for paying the filing fee for each severed case, unless he timely advises the Court that he does not wish to proceed with the action.[4]

*Merits Review Pursuant to 28 U.S.C. § 1915A: Fifth Incident*

This case now focuses on the federal and state law claims against John Doe #3 for allegedly failing to issue Plaintiff a call pass to see a dentist about his loose crown in 2018. The claim is governed by the Eighth Amendment to the United States Constitution. U.S. CONST. amend. VIII; *Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010). Relevant to Plaintiff's claim here, the Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment in violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994). To state a claim, a plaintiff must show that (1) the medical condition was sufficiently serious (objective element), and (2) state officials acted with deliberate indifference to it (subjective element). *Farmer*, 511 U.S. at 834.

With regard to the objective component of this claim, the Seventh Circuit Court of Appeals has long recognized that "dental care is one of the most important medical needs of inmates." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) (citation omitted). Examples of "objectively serious" dental needs involve instances in which the failure to treat a dental condition causes an inmate pain, headaches, bleeding, infected gums, and problems eating. *Id.* at 593 (citations omitted). Plaintiff complains of a loose crown that fell off after Doe #3 failed to issue him a call pass. Although this certainly could amount to a serious medical condition, Plaintiff offers no

---

[4] Plaintiff's request to proceed *in forma pauperis* ("IFP") was denied in this case because he had sufficient funds to pay the filing fee (Doc. 4). He paid this fee on March 28, 2019. (Doc. 6). The Clerk will nevertheless be directed to file the IFP Motion in each newly-severed case for an independent determination of whether he qualifies for IFP in each of the severed cases.

details about the surrounding circumstances, symptoms, intensity, or duration for the Court to assess the seriousness of his condition.

To satisfy the subjective component, the allegations must at least suggest that Doe #3 responded to Plaintiff's medical condition with deliberate indifference. This is shown when prison officials "know of and disregard an excessive risk to inmate health" by being "'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists'" and "'draw[ing] the inference.'" *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (quoting *Farmer*, 511 U.S. at 834). But the factual allegations do not suggest that Doe #3 was actually aware of Plaintiff's condition or the need for urgent treatment when he failed to issue the call pass. The Complaint satisfies neither component of the claim against Doe #3.

Plaintiff has not adequately pled any other federal or state law claim in connection with the fifth incident. Accordingly, all claims arising from the fifth incident are dismissed without prejudice. Plaintiff will have an opportunity to re-plead this claim in an amended complaint that focuses on the alleged denial of dental treatment for his loose crown. If he chooses to proceed with this claim, Plaintiff must follow the below instructions and deadline for filing his amended complaint *in this case*.

## DISPOSITION

**IT IS ORDERED** that Plaintiff's claims in the Complaint are **SEVERED** into the following new cases, which the Clerk is **DIRECTED** to **OPEN** as follows:

- **SEVERED CASE NO. 1** against Defendant **TERI ANDERSON** for all state and federal claims arising from the "First Incident" involving the denial or delay of treatment for Plaintiff's Bell's Palsy at Tamms in 2012-2013.

- **SEVERED CASE NO. 2** against Defendants **SIDDIQUI, WALLS, SKIDMORE, ROWOLD, NEWBALD, HAWKINS, WEXFORD HEALTH SOURCES, INC.** and **BOSWELL PHARMACY SERIVCES** for all state and federal claims arising from the "Second Incident" involving the

denial of medical care for the lingering symptoms of Bell's Palsy at Menard from 2013-2018.

- **SEVERED CASE NO. 3** against Defendants **SIDDIQUI, LANG, HARRIS, WEXFORD HEALTH SOURCES, INC., RITZ, HAWKINS, ROWOLD, PIERCE, SPILLER, PHOENIX, JOHN DOE 2, JOHN DOE 4,** and **JOHN DOE 5** for all state and federal claims arising from the "Third Incident" involving the use of unauthorized force, delay of permit(s), and denial of treatment for chest pain at Menard on or around March 23, 2017.

- **SEVERED CASE NO. 4** against Defendants **RAUDY** and **PIERCE** for all state and federal claims arising from the "Fourth Incident" involving the denial of medical treatment, including an MRI and doctor referral, for severe and persistent chest pain at Menard on or after July 24, 2017.

The Clerk is **DIRECTED** to file the following documents in each newly-severed case:

1) The Complaint (Doc. 1);
2) Motion for Leave to Proceed *in forma pauperis* (Doc. 4);
3) This Memorandum and Order Severing Case.

The Clerk of Court is **DIRECTED** to **TERMINATE** all Defendants, other than Defendant **JOHN DOE #3**, as parties to *this action* in the Case Management/Electronic Case Filing ("CM/ECF") system.

**IT IS FURTHER ORDERED** that the <u>**only claims remaining in this action**</u> are the federal and state law claims against Defendant **JOHN DOE #3** arising from the denial of dental treatment for a loose crown ("Fifth Incident") at Menard in 2018. The Clerk of Court is **DIRECTED** to modify the case caption as follows: **MARK WINGER, Plaintiff vs. JOHN DOE #3, Defendant.**

**IT IS ORDERED** that the federal and state law claim(s) against Defendant **JOHN DOE #3** do not survive screening and are **DISMISSED** for failure to state a claim upon which relief may be granted. Plaintiff is **GRANTED** leave to file a "First Amended Complaint" against Defendant John Doe #3 (and any other state actor involved in the denial of his dental care for a loose crown) on or before **May 29, 2019**. Should Plaintiff fail to file a First Amended Complaint

within the allotted time or consistent with the instructions set forth in this Order, this case shall be dismissed with prejudice for failure to comply with a court order and/or for failure to prosecute his claims. FED. R. CIV. P. 41(b); *Ladien v. Astrachan*, 128 F.3d 1051 (7th Cir. 1997); *Johnson v. Kamminga*, 34 F.3d 466 (7th Cir. 1994); 28 U.S.C. § 1915(e)(2). The dismissal shall also count as one of Plaintiff's three allotted "strikes" under Section 1915(g).

It is strongly recommended that Plaintiff use the civil rights complaint form designed for use in this District. He should label the form, "First Amended Complaint," and he should use the case number for this action (No. 19-cv-00236-NJR). To enable Plaintiff to comply with this Order, the **CLERK** is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

An amended complaint generally supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n. 1 (7th Cir. 2004). The First Amended Complaint must stand on its own without reference to any previous pleading. Plaintiff must re-file any exhibits he wishes the Court to consider. The First Amended Complaint is also subject to review pursuant to Section 1915A.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this Order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  May 1, 2019**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**